IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CAPRICORN PHARMA, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 08-873-JJF |
| | : | |
| MATRIXX INITIATIVES, INC. and | : | |
| ZICAM, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

Alfred W. Zaher, Esquire; Nakul Krishnakumar, Esquire and Joel L.
Dion, Esquire of BLANK ROME, LLP, Philadelphia, Pennsylvania.
Alisa E. Moen, Esquire of BLANK ROME, LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Brett L. Dunkelman, Esquire; David B. Rosenbaum, Esquire and
Erick S. Ottoson, Esquire of OSBORN MALEDON, P.A., Phoenix,
Arizona.
Melanie K. Sharp, Esquire; Sara Beth A.R. Kohut, Esquire and
Pilar G. Kraman, Esquire of YOUNG, CONAWAY, STARGATT & TAYLOR,
LLP, Wilmington, Delaware.

Attorneys for Defendants.

## MEMORANDUM OPINION

August 19 , 2009
Wilmington, Delaware

Joseph J. Farnan Jr.
Farnan District Judge.

Pending before the Court is a Motion to Dismiss Counts V Through X of Plaintiff's First Amended Complaint (D.I. 23), filed by Defendants Matrixx Initiatives, Inc. ("Matrixx") and Zicam, LLC ("Zicam"). For the reasons discussed below, the Court will grant this motion in part and deny it in part.

## I.    BACKGROUND

On November 21, 2008, Plaintiff Capricorn Pharma, Inc. ("Capricorn") filed this action against Defendants Matrixx and Zicam (collectively, "Defendants"). Counts I through IV of Plaintiff's Amended Complaint (D.I. 19), which Defendants do not challenge in the present Motion, allege that Defendants infringed Capricorn's patents, and that Defendants violated the Lanham Act and the Delaware Trademark Act. Counts V through X, which Defendants move to dismiss, are claims for breach of contract, specific performance relating to the ownership and inventorship of certain of Defendants' patents, misappropriation of trade secrets, fraud, and negligent misrepresentation.

Briefly, in late 2001 or early 2002, the parties entered into a business relationship in which it was contemplated that Capricorn would develop and manufacture Zicam-brand cold remedies for Defendants. (Id. ¶ 20.) As part of this relationship, Capricorn and Matrixx signed a mutual confidential disclosure agreement ("CDA") in which they agreed not to "disclose any of

1

the Confidential Information received from other party, other
than on a need to know basis as reasonably necessary [to
directors, officers, employees, and advisors who are bound by
written agreement or otherwise under obligation of
confidentiality to one of the parties.]"  (Id., Ex. C ¶ 2.; id. ¶
23.)  "Confidential Information" under the CDA included, inter
alia, trade secrets, other proprietary information, and patent
disclosures.  (Id. ¶ 22.)  The CDA also provided that "[a]ll
inventions, discoveries and improvements developed, based upon
the Capricorn information and samples shall be the property of
Capricorn."  (Id., Ex. C ¶ 11.)

Beginning sometime before April 30, 2003, Capricorn provided
Matrixx with written information, marked as confidential and
proprietary, relating to Zicam-brand products.  (Id., ¶ 28.)  On
April 30, 2003, Zicam filed two U.S. provisional patent
applications relating to zinc cold remedies.  (Id., ¶ 30.)  On
April 30, 2004, Tim Clarot, a vice president at Matrixx, filed
two Patent Cooperation Treaty ("PCT") applications claiming
benefit of priority from the provisional applications.  (Id.;
D.I. 34, Exs. A, B.)  These were published on November 18, 2004,
entered into U.S. national phase on November 13, 2006, and were
published as U.S. non-provisional patent applications on April
26, 2007, listing Clarot as the sole inventor.  (D.I. 19 ¶ 30.)
Meanwhile, the parties signed and executed an Addendum to the CDA

on August 31, 2005 in which Matrixx and Zicam agreed not to use
Capricorn's confidential information relating to Zicam-brand
Rapid-Melt tablets for any purpose other than submitting such
information for regulatory approval. (Id., Ex. D.)

## II. THE PARTIES' CONTENTIONS

Under the CDA, Capricorn confidentially provided proprietary
technology to Matrixx, such as formulation information and
ingredient lists, pertaining to rapid-disintegrating zinc cold
remedy tablets that Capricorn developed and manufactured for
Defendants. The parties dispute whether, in seeking the two
patents at issue, Defendants stole Capricorn's proprietary
technology and discoveries and improvement based upon that
technology, in violation of the CDA.

Defendants move to dismiss Counts V through X of Capricorn's
Amended Complaint on the ground that they are all barred under
the three-year limits set by the applicable Delaware statutes of
limitations. (D.I. 24 at 7.) Specifically, Defendants contend
that, "accepting the [Amended Complaint's] allegations as true,
the essential factual predicate for these claims occurred as
early as April 2003," when Defendants filed their U.S.
provisional patent applications, "and certainly no later than
November 18, 2004," when Defendants' PCT applications were
published. (Id. at 8.) Defendants argue that these events
should have put Capricorn on notice of the facts giving rise to

3

their claims in this action more than three years before Capricorn filed this action in November 2008. Thus, Defendants argue, Capricorn's Counts V through X must be dismissed as time-barred. (Id.) Finally, Defendants contend that Count VII (Specific Performance - Petition of Inventorship) fails to state a cognizable claim because Capricorn does not, as it must, allege that its president and CEO, S. Rao Cherukuri, actually invented the technology covered by two of Defendants' pending patent applications. (Id. at 11.)

Capricorn responds first that Matrixx fraudulently concealed its misappropriation of Capricorn's trade secrets and its breach of the CDA. (D.I. 34 at 7.) Capricorn argues that Matrixx engaged in affirmative conduct between 2003 and 2007 that was intended to conceal Matrixx's misappropriation of Capricorn's trade secrets. (Id. at 9.) This fraudulent conduct by Matrixx allegedly included: (1) continuing its business relationship with Capricorn after receiving a letter from Capricorn on April 25, 2003, reminding Matrixx of its obligations under the CDA; (2) executing the Addendum to the CDA in August 2005; and (3) "providing affirmative assurances to Capricorn that the parties continued to act under and be bound by the [CDA] in a letter dated on or about August 23, 2007." (D.I. 19 ¶ 39.) Even if the statutes of limitations were not tolled by Matrixx's conduct, Capricorn argues that it did not have actual, constructive, or

4

inquiry notice of the facts giving rise to its claims until
sometime in 2008, and that therefore, the present action was
filed within the statutory period.  (D.I. 34 at 10; 12-15.)
Capricorn also contends that significant disputes of fact weigh
strongly against granting Defendants' Motion to Dismiss.  (Id. at
15-17.)  Finally, Capricorn argues that this Court has power
under 28 U.S.C. § 1338(a) to correct inventorship of Defendants'
patent applications, and that it has adequately pleaded Mr.
Cherukuri's inventorship.  (Id. at 17-19.)

**III. LEGAL STANDARD**

In considering a motion to dismiss filed under Federal Rule
of Civil Procedure 12(b)(6), the Court must accept all factual
allegations in a complaint as true and consider them in the light
most favorable to plaintiff.  Erickson v. Pardus, 551 U.S. 89
(2007).  A complaint must contain "'a short and plain statement
of the claim showing that the pleader is entitled to relief,' in
order to 'give the defendant fair notice of what the . . . claim
is and the grounds upon which it rests.'"  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P.
8(a)).  A complaint need not contain detailed factual
allegations; however, "a plaintiff's obligation to provide the
grounds of his entitlement to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  Id. (internal quotations and

citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id. at 547. To survive a motion to dismiss, a complaint must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." Id. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 173 L. Ed. 2d 868, 884 (2009). In sum, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

## IV. DISCUSSION

Although a statute of limitations defense generally cannot be raised in the context of a motion to dismiss under Rule 12(b)(6), "an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384

n.1 (3d Cir. 1994). The parties do not dispute that the limitations period in the present action is to be determined under Delaware law, nor do they dispute that Plaintiff's Counts V through X are subject to a three-year limitations period, unless the running of the period has been tolled by Defendants' alleged fraudulent concealment. Thus, the parties are in dispute on only two questions. First, with respect to all the challenged counts, has Capricorn adequately pleaded fraudulent concealment? Second, with respect to Count VII, does this Court have jurisdiction to correct inventorship on a patent application?

## A. Whether Plaintiff Has Adequately Pleaded Fraudulent Concealment

Under Delaware law, fraudulent concealment tolls a statute of limitations where a defendant has done some affirmative act or acts involving "actual artifice" which prevents a plaintiff from discovering the facts giving rise to his or her cause of action, "or [where a defendant has made] some misrepresentation which is intended to put the plaintiff off the trail of inquiry." Halpern v. Barran, 313 A.2d 139, 143 (Del. Ch. 1973) (internal quotation omitted). In addition to affirmative acts of misrepresentation, fraudulent concealment can involve the "failure to disclose facts when there is [a] duty to disclose." Litman v. Prudential-Bache Properties, Inc., Civ. No. 12137, 1994 Del. Ch. LEXIS 3, at *10 (Del. Ch. Jan. 14, 1994). Where a defendant has fraudulently concealed the grounds for a plaintiff's cause of action, the

statute of limitations "is suspended only until [plaintiff's]
rights are discovered or until they could have been discovered by
the exercise of reasonable diligence." Halpern, 313 A.2d at 143
(citing Giordano v. Czerwinski, Del. Super. Ct., 216 A.2d 874
(1966)); see also Del. Code. Ann. tit. 6, § 2006 (2009) ("An
action for misappropriation must be brought within 3 years after
the misappropriation is discovered or by the exercise of
reasonable diligence should have been discovered.").

     Although the question is close, the Court concludes that
Capricorn has adequately pleaded fraudulent concealment by
Defendants.  The main point of contention between the parties is
whether publication of a patent application containing a
plaintiff's trade secrets, on its own, begins to run the
limitations period on a plaintiff's state causes of action
related to the theft of the trade secrets.  Defendants argue that
publication of a patent application per se starts the period of
limitations.  Capricorn contends that there is no per se rule and
that publication of a patent application is merely one factor
among several that courts consider in deciding whether a
plaintiff in cases like the present action has pled fraudulent
concealment.  Neither the parties nor the Court has identified a
case directly on point, but there is one case which presents a
very close factual and procedural scenario to the present action.

Specifically, in Synopsys, Inc. v. Magma Design Automation, Inc., No. C-04-3923 MMC, 2005 U.S. Dist. LEXIS 46595 (N.D. Cal. May 18, 2005), Synopsys alleged that Magma infringed certain Synopsys patents, and that Synopsys was the rightful owner of two of Magma's patents because Magma allegedly misappropriated Synopsys's trade secrets in order to obtain the disputed patents. Id. at *2-*3. Synopsys brought claims for, inter alia, inducement of breach of contract, fraud, conversion, unjust enrichment/constructive trust, and unfair competition, all of which Magma moved to dismiss on the ground that they were time-barred under California's four-year period of limitations. Id. at *13-*14. The key point of contention between the parties on this matter was, as here, whether publication of Magma's PCT patent applications for the disputed patents put Synopsys on constructive notice of Magma's alleged trade secret misappropriation. Id. at *15-*18. The district court concluded that, under all the circumstances, it did not. Id. at *22.

The court first rejected Magma's contention that the publication of the patent applications alone was sufficient to start the running of the period of limitations. Under California law, a plaintiff is "only chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry," and accordingly, "the statute

of limitations does not begin to run until the plaintiff has reason to suspect an injury and some wrongful cause . . . ."[1] Id. at *18-*19 (internal quotations omitted). Therefore, the court concluded that "Synopsys was not chargeable with notice of the publication of Magma's PCT application unless and until Synopsys had reason to suspect that its confidential information had been misappropriated, thus triggering a duty for Synopsys to inquire further." Id. at *19. Second, the court rejected Magma's argument that a letter Magma sent to Synopsys some eight years before Synopsys filed its action triggered a duty to inquire further on Synopsys's part. The court found that although parts of the letter might have suggested that Magma and Synopsys were not seeing eye-to-eye with respect to the use of Synopsys's trade secrets, the letter also reaffirmed Magma's commitment to a proprietary information agreement the parties had signed previously. Id. at *20. Based on these facts, the court could not conclude, as a matter of law, that the letter put Synopsys on inquiry notice. Id. Finally, the court rejected

---

[1] Similarly, under Delaware law, the statute of limitations does not begin to run "where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of." Wal-Mart Stores v. AIG Life Ins. Co., 860 A.2d 312, 319 (Del. 2004). That is, the statute begins to run "only upon the discovery of facts constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." Id. (emphasis in original).

10

Magma's contention that certain public statements Magma made about the technology at issue in the suit put Synopsys on constructive or actual notice of the misappropriation more than four years before Synopsys filed its action because Magma did not show how the public statements related to Synopsys's proprietary technology.  Id. at *21-*22.

Applying Synopsys to the present action, the Court concludes that Capricorn has adequately alleged fraudulent concealment, and thus, the Court cannot conclude as a matter of law that Counts V through X of Capricorn's Amended Complaint are time-barred.  As an initial matter, the Court concludes that, in the present action, the publication of a patent application does not provide the type of notice required to start the running of the period of limitations.  Defendants assert that Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc., No. 98-80-SLR, 2005 U.S. Dist. LEXIS 2259, (D. Del. Feb. 2, 2005) [hereinafter Medtronic I], created a per se rule that publication of a patent application containing a trade secret destroys that secret. However, the Medtronic I court clearly stated that "Medtronic had actual notice of [the alleged infringing and misappropriated] technologies."  Id. at *2-*3 (emphasis added).  Furthermore, in an earlier proceeding in the same action, the Court considered the publication of a patent containing trade secrets as just one

11

factor among many supporting its conclusion that no fraudulent
concealment had occurred:

> The fraudulently concealed exception requires that a
> plaintiff show that a defendant actively concealed
> information with the intent to "prevent inquiry or
> knowledge of the injury." In this case, there is no
> evidence of record that ACS actively concealed any of
> its activities. It presented its Multi-Link stent at
> professional conferences and meetings. It offered
> prototypes and literature regarding the stent to anyone
> in attendance at most of these meetings. It filed a
> patent application that, according to Medtronic,
> contained AVE and Medtronic trade secrets. Therefore,
> the court declines to find that ACS fraudulently
> concealed its activities.

Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., No.
98-80-SLR, 2005 U.S. Dist. LEXIS 1158, at *15-*16 (D. Del. Jan 5,
2005) (internal citations omitted) [hereinafter Medtronic II].
Drawing on the multitude of facts tending to show that no
fraudulent concealment had occurred, the Medtronic II court
granted the defendant's motion for partial summary judgment and
found that the plaintiff's state law claims were time-barred.
Id. at *19-*20.

In contrast, in the present action, Capricorn has presented
evidence supporting its claim that Defendants actively concealed
their alleged misappropriation of Capricorn's proprietary
technology. As recited supra, Capricorn alleges: (1) that
Defendants continued their business relationship with Capricorn
even after receiving a letter from Capricorn on April 25, 2003,
reminding Matrixx of its obligations under the CDA; (2) that the

parties executed an Addendum to the CDA in August 2005,
reaffirming its terms; and (3) that Matrixx "provid[ed]
affirmative assurances to Capricorn that the parties continued to
act under and be bound by the [CDA] in a letter dated on or about
August 23, 2007." (D.I. 19 ¶ 39.) Capricorn contends that this
course of conduct led it to reasonably believe that Defendants
had honored, and continued to honor, the terms of the CDA, and
that therefore, Capricorn had no reason to suspect that
Defendants might be misappropriating Capricorn's technology.
Defendants respond that the April 25, 2003 letter constitutes
definitive evidence that Capricorn was aware of Matrixx's intent
to misappropriate Capricorn's trade secrets more than three years
before Capricorn filed suit. They also contend that the Addendum
to the CDA and the August 23, 2007 letter were merely "forward-
looking" and made no promises regarding past conduct. (D.I. 36
at 7.) However, the Court previously has rejected the contention
that a letter from a plaintiff seeking assurances that a
defendant would not use a plaintiff's proprietary technology was
sufficient to put a plaintiff on notice of the defendant's
misappropriation of trade secrets. See Callaway Golf Co. v.
Dunlop Slazenger Group Ams., Inc., 318 F. Supp. 2d 222, 225 (D.
Del. 2004) (stating that such a letter "[a]t most . . . suggests
that Dunlop was aware of the possibility that Callaway might
misappropriate its trade secrets in the future, but it does not

13

suggest . . . that Dunlop discovered or should have discovered that [Callaway] misappropriated its trade secrets, and thus triggered the running of the statute of limitations"). The Court also cannot conclude, in light of the April 2003 letter, that the Addendum to the CDA and the August 2007 letter were merely "forward-looking" documents. Under the circumstances, it appears that more discovery is needed in order to determine the accuracy of Defendants' contentions on that matter.

Moving on, neither party contends that Capricorn's proprietary knowledge was disseminated at a trade show or in any other public forum, nor do the parties contend that any prototypes of cold remedies employing Capricorn's knowledge were distributed, as in Medtronic II. And while the Amended Complaint does allege that Defendants are producing and selling cold remedies using Capricorn proprietary technology, it seems, viewing the allegations in the light most favorable to Capricorn, that this public use did not occur until some time in 2008, when Matrixx stopped using Capricorn as its supplier. (See id. 19 ¶¶ 29, 32.) Thus, if it was Defendants' public use that started the running of the statute of limitations, Capricorn's action has been brought well within the three-year period. In short, almost all of the facts that justified the Medtronic II court's conclusion that the plaintiff's state claims were time-barred are absent from the present action. Accordingly, the Court concludes

14

that <u>Medtronic I</u> and <u>Medtronic II</u> are not controlling in the present action.

Defendants also point to this Court's decision in <u>Raza v. Siemens Med. Solutions USA, Inc.</u>, No. 06-132-JJF, 607 F. Supp. 2d 689 (D. Del. 2009), as support for the notion that publication of a patent application begins the running of the limitations period for misappropriation and related state claims. The Court in <u>Raza</u> extended <u>Medtronic I</u>'s reasoning that "when a patent is published containing a trade secret, it destroys the trade secret," to a case involving publication of patent applications. <u>Id.</u> at 693. However, <u>Raza</u> is distinguishable from the present action in at least two critical respects. First, the plaintiff in <u>Raza</u> did not even present a fraudulent concealment argument, nor did he allege any facts that could have established it. <u>Id.</u> Second, and equally important, the defendant in <u>Raza</u> publicly launched a product that allegedly contained the plaintiff's trade secret well before the patent application containing the trade secret was published. <u>Id.</u> Under those circumstances, this Court concluded that "no reasonable fact-finder could conclude that Plaintiff would have been unable to discover his claims in the exercise of reasonable diligence and file his Complaint based on those claims [by the end of the limitations period]," and granted the defendant's motion to dismiss the plaintiff's claims as time-barred. <u>Id.</u> at 694.

15

As with <u>Medtronic I</u> and <u>Medtronic II</u>, the Court concludes that <u>Raza</u> is factually quite distinct from the present action, and that therefore, <u>Raza</u> does not control here.  Therefore, based on the current set of facts, the Court cannot conclude that Counts V through X of Capricorn's Amended Complaint are time-barred.

**B.    Whether This Court Has Jurisdiction To Correct Inventorship On A Patent Application**

Defendants also move to dismiss Count VII on the ground that this Court does not have jurisdiction to correct inventorship on issued patents a patent application.  Defendants note that while 35 U.S.C. § 256[2] gives this Court jurisdiction to correct inventorship on <u>issued</u> patents, 35 U.S.C. § 116[3] leaves the matter of correcting inventorship on patent <u>applications</u> within the discretion of the Director of the Patent and Trademark Office

---

[2] This Section provides for the correction of inventorship on "an issued patent" and states, in pertinent part, "The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section.  <u>The court</u> before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly."  35 U.S.C. § 256 (2009) (emphasis added).

[3] This Section provides, in pertinent part, "Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, <u>the Director</u> may permit the application to be amended accordingly, <u>under such terms as he prescribes</u>."  35 U.S.C. § 116 (2009) (emphases addded).

16

("PTO"). Capricorn contends that this Court has jurisdiction over Count VII under 28 U.S.C. § 1338(a), which provides, "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ." 28 U.S.C. § 1338(a) (2009).

However, Section 1338, "like the statute establishing federal question jurisdiction, does not create causes of action. It merely allows federal courts to hear causes of action independently created by Congress in federal patent law." Sagoma Plastics, Inc. v. Gelardi, 366 F. Supp. 2d 185, 189 (D. Me. 2005) (internal citations omitted). Sections 116 and 256 of the Patent Act have far more narrow purposes: they provide the mechanisms and procedures through which inventorship may be corrected on patent applications and issued patents. The Court cannot conclude that Section 1338 grants this Court jurisdiction over a part of the patent application process when the provisions of the Patent Act have clearly left inventorship determinations during the patent application process in the hands of the Director of the PTO. This Court has addressed this question before:

Comparing [Sections 116 and 256], it is clear that Congress intended to draw a distinction between patent applications and issued patents. While the patent is still in the process of gestation, it is solely within the authority of the Director. As soon as the patent actually comes into existence, the federal courts are empowered to correct any error that the Director may have committed. Such a scheme avoids premature litigation and litigation that could become futile if the Director declined to grant a patent or voluntarily

acceded to the claims of the would-be inventor prior to issue.

Czarnik v. Illumina, Inc., 437 F. Supp. 2d 252, 257-58 (D. Del. 2006) (quoting E.I. Du Pont de Nemours & Co. v. Okuley, 344 F.3d 578, 583-84 (6th Cir. 2004)); see also Sagoma Plastics, 366 F.Supp.2d at 188 ("[I]t can be inferred that Congress' clear delegation of power to the courts in § 256 to correct issued patents and its failure to make any such express delegation in § 116 indicates a conscious choice to bar the courts from correcting errors regarding inventorship until after the patent has issued."). Finding this reasoning no less persuasive than it did in Czarnik, the Court will dismiss Count VII for correction of inventorship on the pending patent applications.

## V.   CONCLUSION

For the foregoing reasons, the Court cannot conclude that Counts V through X of Capricorn's Amended Complaint are time-barred, but the Court also concludes that Count VII of the Amend Complaint should be dismissed. Accordingly, the Court will grant in part and deny in part Defendants' Motion to Dismiss Counts V Through X of Plaintiff's First Amended Complaint.

An appropriate Order will be entered.